J-A29027-15, J-A29029-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| J.R., | IN THE SUPERIOR COURT OF |
| | PENNSYLVANIA |
| Appellant | |
| | |
| v. | |
| | |
| L.T., | |
| | |
| Appellee | No. 391 WDA 2015 |

Appeal from the Order February 13, 2015
In the Court of Common Pleas of Allegheny County
Family Court at No(s): FD 07-003697-004

| J.R., | IN THE SUPERIOR COURT OF |
| | PENNSYLVANIA |
| Appellant | |
| | |
| v. | |
| | |
| L.T., | |
| | |
| Appellee | No. 495 WDA 2015 |

Appeal from the Order Dated March 25, 2015
In the Court of Common Pleas of Allegheny County
Family Court at No(s): FD 07-003697-004

BEFORE:  FORD ELLIOTT, P.J.E., BOWES AND MUSMANNO, JJ.

MEMORANDUM BY BOWES, J.:                     **FILED DECEMBER 30, 2015**

In these consolidated appeals,[1] J.R. ("Father") appeals the March 25, 2015 custody order awarding him and L.T. ("Mother") shared physical custody and shared legal custody of their minor son, J.R., Jr. Father also appeals the interlocutory discovery order that prohibited him from serving subpoenas in the then-ongoing custody litigation without leave of court and awarded Mother counsel fees totaling $2,290.75.[2] We affirm.

J.R., Jr. was born out of wedlock during April 2007 of Mother and Father's relationship. Since his birth, J.R., Jr. either resided with Mother alone or with Mother and Father in an intact family. For the first three years of their son's life, Mother maintained primary physical custody and Father exercised periods of partial custody under an informal arrangement. On July 27, 2010, Father filed a custody complaint seeking primary physical custody. On the same date, he seized J.R., Jr. under the guise of a pre-arranged custody exchange. He refused to return the child to Mother unless she reconsidered her objection to rekindling their romantic relationship. Mother countered Father's actions by contemporaneously filing a counterclaim for primary physical custody and sole legal custody and an emergency petition

_____

[1] As these matters involve identical parties and stem from an interrelated set of facts, we consolidated the appeals for disposition.

[2] Upon the entry of a final order, a party can challenge the propriety of interlocutory orders that were not immediately appealable as of right. *Quin v. Bupp*, 955 A.2d 1014, 1020 (Pa.Super. 2008) ("[A] notice of appeal filed from the entry of the final order in an action draws into question the propriety of any prior non-final orders").

for relief pursuant to Pa.R.C.P. 1915.13, seeking the immediate return of her son.  On August 10, 2010, the trial court entered an interim order directing J.R., Jr.'s immediate return to Mother's physical custody.  That order awarded Father four hours of supervised physical custody per week.

A subsequent order extended Father's periods of physical custody to alternating weekends, and on January 3, 2011, the parties entered an interim consent agreement whereby they shared physical custody on an alternating weekly basis.  Since then, the parties have litigated yearly custody or contempt-related issues.

The trial court summarized the latest developments in the custody dispute as follows:

> Recent history starts in February 2014, when the parties were able to reach a consent agreement . . . outlining the custody arrangement.  The parents agreed that they would share physical custody on a week-on week-off basis.  The parents further agreed that legal custody would be largely shared, though Mother had the sole legal right to choose schools for the child.  [T]his consent agreement did very little to stem the influx of litigation.  The parties routinely returned to motions court. The conflict again culminated in two trials: one on contempt before Hearing Officer Valles in November 2014 and one on custody[.]
>
> The latest custody trial comes by way of Father's Petition for Special Relief-Custody (which this Court deemed a request for custody modification), dated July 10, 2014, and by Mother's Cross-Complaint for Modification of Custody Order, dated August 26, 2014.  Father later brought forth new matters of contempt and new requests regarding custody.  This Court consolidated those matters with the already-scheduled February 2015 custody trial.  The trial lasted two and [one-]half days[.]  On March 24, [2015,] the parties appeared, and this Court made findings of fact on the record and issued its order.

Trial Court Opinion, 5/29/15, at 6-7 (citations to the record omitted).[3] As it relates to the instant appeal, the trial court awarded shared legal custody but designated specific authority over certain matters to each parent. Mother was empowered to make educational and routine medical decisions. Father was vested with authority over their son's dental, orthodontic, and optical care. Essentially, he objects to sharing legal custody with Mother.

On April 6, 2015, Father filed a Rule 1925(b) statement articulating nine claims, which he reiterates on appeal as follows:

> 1. Did the Honorable Court err in its discretion regarding the best interest of the child pursuant to 23 P[a].C.S. §5323, 23 P[a].C.S. § 5328 [(a),] and 23 P[a].C.S. §5328[(b)]?
>
> 2. Did the Honorable Court err in its decision to forbid the non-custodial parent the right to be present at any non-public events or areas, including such places as locker-rooms?
>
> 3. Did the Honorable Court err in its decision to remove [Father's] shared legal right to educational custody/decision making of the minor child . . . ?
>
> 4. Did the Honorable Court err in its decision to remove [Father's] shared legal right to medical decisions, including authorizing services, and attending medical appointments of the minor child . . . ?
>
> 5. Did the Honorable Court err in its decision to remove the requirement of advanced notice on travel itineraries outside of Allegheny County?

---

[3] The trial court recited its consideration of the relevant best-interest factors on the record during the March 24, 2015 hearing. *See* N.T., 3/24/15, at 2-8. Father does not articulate a specific challenge to the court's consideration of the factors enumerated in 23 Pa.C.S. § 5328(a).

6. Did the Honorable Court err in the denial of New Matters and Petition for Special Relief Custody [filed on] January 30, 2015 . . . ?

7. Did the Honorable Court err in its review of the evidence provided by the Appellant . . . ?

8. Did the Honorable Court err in allowing [Mother's] testimony without supporting evidence . . . ?

9. Did the Honorable Court err in allowing [Mother's] testimony and evidence of items/ circumstances that she previously rules the plaintiff could not testify to or provide related evidence . . . ?

Father's brief at 2-3.

We review the trial court's custody order for an abuse of discretion. *S.W.D. v. S.A.R.,* 96 A.3d 396, 400 (Pa.Super. 2014). We defer to the trial court's factual findings that are supported by the record and its credibility determinations. *Id*. This Court will accept the trial court's conclusion unless it is tantamount to legal error or unreasonable in light of the factual findings. *Id*.

Although Father presents nine arguments in his statement of questions presented, he levels only seven arguments in his brief. As Father's list of questions presented do not correspond with his arguments, we address his contentions as they appear in the argument section of his brief. Primarily, Father asserts that the trial court erred or abused its discretion in fashioning an award of shared legal custody whereby Mother maintained authority to decide matters regarding education and medical decisions. The crux of this

assertion is that the certified record does not reveal that the parties exhibited the minimum level of cooperation required to maintain shared legal custody. He contends that Mother is the source of discord, and since he is the blameless party, he should exercise sole legal custody. Father further argues that the trial court employed a gender bias in overlooking Mother's prior contemptuous conduct and in promoting Mother's interest in governing the child's education and medical decisions over his. These assertions subsume the first, third, and fourth arguments Father raised in his brief.

In **Yates v. Yates**, 963 A.2d 535 (2007), this Court reiterated the three considerations relevant to whether a trial court should award shared legal custody in a highly contentious custody dispute. We explained,

> In determining whether to award shared legal custody, the trial court must consider the following factors: (1) whether both parents are fit, capable of making reasonable child rearing decisions, and willing and able to provide love and care for their children; (2) whether both parents evidence a continuing desire for active involvement in the child's life; (3) whether the child recognizes both parents as a source of security and love; and (4) whether a minimal degree of cooperation between the parents is possible.

**Id**. at 542. Herein, Father challenges only the court's consideration of the factor concerning the minimal degree of cooperation. He does not dispute the trial court's rationale as it relates to any other aspects of the relevant consideration.

In rejecting Father's positions, the trial court first noted that Mother and Father both were fit parents who desired continuing involvement in J.R., Jr.'s life, and who are both viewed as a source of security and love. Next, the court concluded that awarding Mother sole decision making authority over education and medical decisions was in J.R., Jr.'s best interest. In contrast to Father's perspective of Mother as an antagonist, the trial court believed that Father's animosity toward Mother, and his persistent desire to litigate aspects of the custody arrangement that he finds unsatisfactory, are affecting J.R., Jr. negatively. Hence, in an attempt to alleviate some of the conflicts, the trial court crafted a legal custody arrangement that provided each parent unilateral authority over some aspect of their son's life. The trial court intended to create clearly demarcated lines of parental authority to limit Father's involvement in areas of J.R., Jr.'s life where his participation has proven to be counter-productive to the child's best interest. Thus, the court concluded that, even after acknowledging that the level of parental opposition that exists in this case would normally impede the grant of shared legal custody, providing Father unilateral authority over certain areas of his son's dental, orthodontic, and optical care and granting Mother sole authority over educational decision-making and routine medical decisions, would best serve the child. For the following reasons, we find that the trial court did not abuse its discretion by incorporating these limited exceptions to the award of shared legal custody.

Referencing, without discussion, our holding in **Hill v. Hill**, 619 A.2d 1086 (Pa.Super. 1993), Father asserts that the legal custody arrangement that the trial court crafted is antithetical to the concept of shared legal custody. While Father's statement is an accurate representation of the law when one parent wields ultimate authority to decide any parenting disputes, that factual scenario is not at issue herein.

In **Hill**, **supra**, we addressed whether the trial court erred in awarding shared legal custody with the added designation that, "In the event of disagreement, Mother's preference shall prevail." **Id**. at 1088. We held that the trial court's structure of legal custody was tantamount to providing "the father authority in name only" because his decisions would always be subject to the mother's preferences. **Id**. at 1088. That is, the father could exercise legal custody unless or until Mother disagreed with any one decision, and if that occurred, she had final authority. Accordingly, we rejected the purported grant of shared legal custody.

In contrast to the facts we encountered in **Hill**, where one parent exercised ultimate decision-making authority over every possible disagreement, instantly, the trial court bestowed upon Mother and Father ultimate authority over specific facets of their son's healthcare and education. They share legal custody over all remaining aspects of J.R., Jr.'s life and neither party is empowered to make those decisions unilaterally. The distinguishing feature of this case alleviates the precise problem that we

highlighted in **Hill**, as neither parent in the present case is exercising legal custody in name only. Thus, Father's allegation of error is unpersuasive.

Additionally, we observe that Father mistakes the trial court's factual findings that he, rather than Mother, is the source of dissonance and its concomitant credibility determinations in Mother's favor, as gender bias. Notwithstanding his protestations to the contrary, the certified record belies Father's claim of bias. The record reveals that Father is overbearing in his interactions with Mother and often exploits his interactions with Mother as opportunities to berate her and accuse her of perceived malfeasance.

For example, Megan Edwards, the school psychologist who attends J.R., Jr.'s individualized education plan ("IEP") meetings, testified that Father's behavior during an August 2013 IEP meeting was particularly troubling. N.T., 2/18/15, at 239, 243. Father interjected during the meeting that Mother was not married, and he subsequently transmitted emails to school staff indicating that Mother had been fired from her employment or evicted from her home. **Id**. at 239. As it relates to Father's comments concerning Mother's marital status, Ms. Edwards testified that Mother deflected the intended insult and redirected Father by stating, "I'm not going to get into this here . . . Let's proceed with the . . . IEP meeting." **Id**. at 246. Father did not deny the altercation during the hearing; instead, he diminished the incident as a five second interaction that did not upset anyone other than Mother. **Id**. at 247. Ms. Edwards has also witnessed

Father insult Mother in front of school staff on other occasions in an attempt to goad her into retaliation. *Id*. at 239. In sum, she opined that, while Father is genuinely interested in J.R., Jr.'s development, he is also interested in inciting Mother and catching her in a lie. *Id*. Plainly, the record belies Father's assertion that Mother is the source of the parental discord and his underlying allegation of trial court bias.

Father's next set of complaints implicate the second and fifth arguments that he asserts in his brief. He advances two bare contentions challenging the propriety of two aspects of the trial court's decision. First, he assails the restriction that precludes Mother and Father from appearing at non-public events and in private areas such as locker rooms and dressing rooms when they do not have custody. Next, Father complains that the court removed from the custody order a previously-used provision that required the custodial parent to provide advance notice of any plans to travel outside of Allegheny County. In its Rule 1925(a) opinion, the trial court explained that J.R., Jr. would be better served if Mother and Father limited their public interactions. *See* Trial Court Opinion, 5/29/15, at 14. Hence, the court fashioned the custody order to "[eliminate] the tension and conflict that the child must endure when his parents attempt to co-parent [in public]." *Id*. at 14. Similarly, the trial court found that the notice requirement created more tension and conflict between the parties than it alleviated. It reasoned, "Both parents are capable and fit enough to travel

with the child without the added burden of including the other [in its decision making]." *Id*.

Father neglects to support either of the foregoing claims with legal argument or citation to relevant legal authority. He simply posits that these aspects of the trial court's decisions are contrary to J.R., Jr.'s best interest. Father's contentions ignore our limited standard of review and the deference that we have for the trial court's fact-finding. *See S.W.D.*, *supra*. Herein, Father neglected to present any meaningful challenge to the court's findings or establish that the trial court's best-interest determination is tantamount to legal error or unreasonable in light of the factual findings. As Father failed to present any substantive argument to support his naked assertions of error, no relief is due. *See In re W.H.*, 25 A.3d 330, 339 n.3 (Pa.Super. 2011) ("where an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived.").

Father's next assertion appears to contest the manner in which the trial court disposed of his "'New Matter's [sic] and Request for Special Relief' based on her bias[.]" Father's brief at 12. This claim corresponds to the sixth argument asserted in his brief. Essentially, he complains that the trial court consistently ignored the allegations of contempt he directed toward Mother. In confronting this issue, the trial court explained that it addressed

Father's "new matter" by denying his serial contempt allegations following the custody hearing. The court explained,

On this matter, Father simply failed to make any case for contempt[.] His petition for contempt was largely incoherent, merely reiterating certain provisions of the February 5, 2014 consent order. . . . [Moreover,] much of the discussion about contempt involved a previous contempt trial before [a hearing officer]. That hearing is the subject of a related appeal before the Superior Court. *See* 494 WDA 2015. In other words, Mother's alleged contemptuous acts had already been adjudicated, and Father was attempting to re-litigate the matter before this Court. This court allowed Father to present evidence of contempt between the November 2014 trial and the January 30, 2015 petition, but he could not do so.

Trial Court Opinion, 5/29/15, at 15 (citation to record omitted). In light of the trial court's explanation and Father's failure to present any evidence of bias other than the trial court's alleged refusal to accommodate his *pro se* status, this claim fails.

Furthermore, we observe that the record does not support Father's assertion that the trial court failed to accommodate his *pro se* status. The court noted, "this [c]ourt cannot liberally construe Father's arguments [relating to Mother's tardiness in returning Father's telephone calls]. He expected a great deal of his testimony and evidence to speak for itself. Unfortunately, not everything was as obvious for the Court as it was for Father." *Id*. at 16. Stated simply, after hearing the relevant evidence, the trial court concluded that Father failed to establish any contemptuous behavior. It reasoned that any harm related to Mother's presumed failure to return all of Father's telephone messages promptly was *de minimus*.

Additionally, the court determined that under the circumstances presented in this case, Father's incessant telephone calls during Mother's custodial periods was tantamount to harassment. Father failed to refute the trial court's finding.

Father's final substantive issue relative to the March 25, 2015 custody order is that the court erred in discounting his evidence and crediting Mother's uncorroborated evidence. This assertion correlates with the seventh contention leveled in Father's brief. In its entirety, Father levels the following argument:

> It is clear [by] the dramatic changes between the Custody Order the parties walked in with and the Custody Order that was handed down by the Trail [sic] Court that [Mother's] testimony was deemed creditable [sic] without supporting evidence. Were as [sic] [Father] provided amble [sic] evidence to the contrary of [Mother] and . . . [her] [w]itnesses' testimony. In doing so, the Trial [sic] Court abused it's [sic] discretions [sic], making visible it's [sic] bias in the proceedings. Pa. § 33 Rule 2.3 a&b.

Father's brief at 13.

This assertion fails for at least two reasons. First, the claim is woefully underdeveloped and without reference to relevant legal authority beyond the unintelligible reference to Rule 2.3. Hence, it is waived. *In re W.H.*, *supra* at 339 n.3. Second, as previously noted, the trial court did not share Father's apparent perspective that the evidence he presented was obvious and indisputable. Father's argument ignores our well-ensconced deference for the trial court's role as the ultimate arbiter of fact and its credibility determinations. *S.W.D.*, *supra*. Plainly, we will not reweigh Father's

- 13 -

evidence in order to reach a more favorable conclusion. For either of these reasons, Father's claim fails.

Next, we address the issues raised in Father's appeal, designated as 391 WDA 2015, from the February 13, 2015 discovery order prohibiting him from serving subpoenas without leave of court and ordering him to pay Mother's counsel fees associated with challenging the twenty-three subpoenas that he filed in this matter. No relief is due.

The following facts are relevant to our review. Prior to the February 18, 2015 custody trial, Father served twenty-three subpoenas on various colleges, school districts, and financial service companies demanding the production of documents and discovery relating to Mother.[4] Father neglected to obtain leave of court to conduct discovery and he failed to serve Mother with notice of his intent to engage discovery or provide copies of the discovery requests. Mother objected to the barrage of discovery requests pursuant to Pa.R.C.P. 4009.21 (c), and filed a motion for a protective order seeking to preclude Father from continuing his behavior. She alleged that Father misused the court's subpoena powers for illegitimate reasons and to

_____

[4] Other than one subpoena that inquired about Mother's correspondence with J.R., Jr.'s school district, all of the remaining subpoenas directed the recipients to produce Mother's personal information regarding her education transcripts, applications for admissions, financial aid assistance, employment, and mortgage applications. Father has never proffered an explanation as to how the bulk of his discovery request was relevant to the underlying dispute with Mother regarding which parent should exercise legal custody.

request information that was irrelevant to the underlying custody determination. She entreated the trial court to issue a protective order preventing Father from engaging in further misuse of the subpoena process and she sought reimbursement of her counsel fees pursuant to § 5339 of the Child Custody Law.

Although Father filed a response to Mother's motion, he neglected to appear during the ensuing hearing. On February 13, 2015, the trial court granted Mother's motion for a protective order and awarded counsel fees totaling $2,290.75. The trial court determined that Father ignored the rules of civil procedure both by circumventing the deterrence of discovery in custody matters without leave of the trial court and by failing to provide Mother with notice of his intention to file the subpoenas upon the twenty-three recipients. In reaching its decision, the court stressed that in attempting to collect personal information about Mother that was irrelevant to the custody dispute, Father ignored the procedural orders that were "designed to prevent this very situation form occurring." Trial Court Opinion, 5/29/15, at 5. The trial court further reasoned that counsel fees were warranted in this case due to Father's conduct and concluded that Mother established the costs that she incurred attempting to undo the harm caused by Father's vexatious behavior. *Id*.

On appeal, Father asserts five separate issues and supports each with arguments of varying degrees of lucidity. Most of Father's arguments are

composed of two or three conclusory sentences that either 1) assail the trial court's civility and professional integrity; or 2) challenge the court's decision to hold the hearing in his absence. None of Father's five enumerated arguments challenges the trial court's findings of fact regarding his conduct or its conclusion that the service of approximately two dozen subpoenas was in bad faith and tantamount to obdurate and vexations conduct.

From what we can ascertain from Father's meager arguments and the summary of argument section of his brief, Father contends that he was not able to attend the February 3, 2015 hearing due to his long-planned travel commitment that he was not willing to alter. Father continues that he advised the trial court of the scheduling conflict in his response to Mother's motion for special relief and that he anticipated that the trial court would extend to him the same courtesy that it had extended to Mother to accommodate her scheduling conflicts in the past.

Substantively, Father does not contest the finding that he served the subpoenas on the various institutions in violation of the rules of civil procedure. However, as it relates to the notice issue, he maintains that he mailed to Mother the required notices and copies of the subpoenas but that the documents were returned to him undeliverable. In this regard, he posits that the trial court ignored his efforts to comply with the procedural rules in fashioning the protective order and award of attorney's fees. For the following reasons, Father's claim is unpersuasive.

Pursuant to both Pa.R.C.P. 1930.5 relating to discovery in domestic relations matters generally and Pa.R.C.P. 1915.5(c) concerning custody proceedings specifically, discovery is not permitted in custody matters absent leave of court. The general rule provides, "There shall be no discovery in a simple support, custody or Protection from Abuse proceeding unless authorized by order of court." Pa.R.C.P. 1930.5. Likewise, the provision included in the portion of the rules concerning custody matters reiterates, "The shall be no discovery unless authorized by special order of court." *Id*.

Instantly, it is beyond peradventure that Father violated the rules restricting discovery in custody cases absent the trial court's express authorization. *See* Pa.R.C.P. 1915.5(c) and 1930.5. Moreover, it is equally clear from the procedural history that Father failed to serve Mother copies of the subpoenas pursuant to Pa.R.C.P. 4009.21 or provide her the required twenty-day notice to object. While Father professes to have mailed the documents, upon their return to him unclaimed, he had actual knowledge that Mother was not served. Rather than attempt to perfect service of the notice of the unsanctioned subpoenas, Father proceeded unilaterally and served approximately two dozen subpoenas on various educational and financial institutions seeking Mother's private information. As the record supports the court's determination that Father disregarded the Pennsylvania Rules of Civil Procedure in serving the twenty-three subpoenas to institutions

that were not involved in his custody dispute with Mother, we will not disturb the trial court's interlocutory discovery order that precluded Father from issuing subpoenas without its specific authorization and awarding Mother $2,290.75 in attorney fees.

Thus, for all of the foregoing reasons, we affirm the February 13, 2015 award of counsel fees and the March 25, 2015 order granting Mother and Father shared physical custody and shared legal custody of their son.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/30/2015