**James QUINN, Appellant**

v.

**Michael BUPP, Appellee**

**James Quinn, an Individual, Appellee**

v.

**Michael Bupp, Appellant.**

Superior Court of Pennsylvania.

Argued March 19, 2008.

Filed July 21, 2008.

Reargument Denied Sept. 19, 2008.

Irving M. Portnoy, Pittsburgh, for Quinn.

Albert J. Zangrilli, Jr., Pittsburgh, for Bupp.

BEFORE: BENDER, BOWES and TAMILIA, JJ.

OPINION BY BOWES, J.:

¶ 1 This appeal and cross-appeal followed the trial court's determination that

Michael Bupp ("Seller") breached a real estate sales agreement and its pretrial ruling that limited the amount of damages recoverable by James Quinn ("Buyer"). We affirm the trial court's conclusion that Buyer is entitled to specific performance of the agreement, but we reverse in part its decision to restrict the amount of damages that Buyer is entitled to recover. We remand solely for a hearing on damages as further outlined in this adjudication.

¶ 2 Buyer instituted this breach of contract action against Seller after Seller refused to sell him certain property in Pittsburgh, Pennsylvania. On November 22, 2004, the parties entered into an agreement for the sale of six party-wall duplex residences located at 372–380 McKee Place. Buyer agreed to pay Seller $760,000 for the commercial rental property. The agreement was subject to a mortgage contingency clause with the commitment required by January 10, 2005. Sky Bank rendered the commitment on January 5, 2005, and Buyer notified Seller's real estate agent two days later. The commitment letter reads:

¶ 3 Dear [Buyer]:

SKY BANK ("Lender") is pleased to inform you ("Borrower") that Lender has approved your loan request for a commercial mortgage ("Loan"), under the following terms and conditions:

1. *Amount:* $800,000

2. *Purpose:* To acquire (6) duplexes in Oakland, Pennsylvania, and make improvements to investment properties.

3. *Rate:* 7.00% for 3 years; then the Federal Home Loan Bank (FHLB) 36 month advance rate + 3.25%, repricing every three years until maturity.

   **NOTE: The 7.00% rate is valid until February 5, 2005. After such date, the rate will be adjusted based on the interest rate index and margin stated above.**

4. *Origination Fee:* $6,000, Payable at loan closing.

5. *Term:* 9 years

6. *Amortization:* 5 years

7. *Payments:* 108 monthly payments of principal and interest

8. *Collateral:* Collateral for this loan shall consist of First Mortgages and Assignment of Rents on (6) duplexes along McKee Place in Oakland, PA, on 3219 Brodhead Road in Aliquippa, PA, on 130 Patterson Drive, Aliquippa, PA and on 767 Narrows Run Road, Moon Township, PA.

. . . .

11. *Real Estate Evaluation:* Lender shall obtain at Borrower's sole cost current and satisfactory, independent evaluations of value for the nine aforementioned properties to be mortgaged. The aggregate Loan to Value shall not exceed 70%.

¶ 4 On January 10, 2005, Seller sent Buyer a letter indicating that he intended to terminate the agreement on the ground that it had been breached because the mortgage commitment by Sky Bank contained contingencies. In that letter, Seller maintained that the commitment was contingent because the loan was to be secured not just by the rental properties subject to the agreement of sale, but also by three other pieces of real estate owned by Buyer. This action proceeded to a nonjury trial. Prior to trial, the trial court issued a pretrial ruling that restricted the amount of damages that could be recovered by Buyer. After trial, Buyer was awarded specific performance. This appeal by Buyer and cross-appeal by Seller followed.

¶ 5 We first address the issue raised in the cross-appeal because it pertains to whether Seller breached the agreement of

sale; an adverse ruling against Buyer on this question would preclude the award of any damages and moot his appeal. Hence, we now review the propriety of the trial court's decision to grant Buyer's request for specific performance.

■ ¶ 6 Initially, we note that the interpretation of any contract is a question of law and this Court's scope of review is plenary. Moreover, we need not defer to the conclusions of the trial court and are free to draw our own inferences. In interpreting a contract, the ultimate goal is to ascertain and give effect to the intent of the parties as reasonably manifested by the language of their written agreement. When construing agreements involving clear and unambiguous terms, this Court need only examine the writing itself to give effect to the parties' understanding. This Court must construe the contract only as written and may not modify the plain meaning under the guise of interpretation.

*Nevyas v. Morgan,* 921 A.2d 8, 15 (Pa.Super.2007) (quoting *Currid v. Meeting House Restaurant, Inc.,* 869 A.2d 516, 519 (Pa.Super.2005)). "In addition, a preferred contract interpretation ascribes under all circumstances 'the most reasonable, probable, and natural conduct to the parties.'" *Gaffer Insurance Co., Ltd. v. Discover Reinsurance Co.,* 936 A.2d 1109, 1113 (Pa.Super.2007) (quoting *Midomo Co. v. Presbyterian Housing Development Co.,* 739 A.2d 180, 191 (Pa.Super.1999)).

■ ¶ 7 Seller's position is that he did not breach the agreement because he was permitted to terminate the agreement due to a breach by Buyer. His agreement requires interpretation of the mortgage contingency clause, which provides in relevant part as follows:

(C) 1. Mortgage commitment date *Jan. 10, 2005.* If a written commitment is not received by Seller [Bupp] by the above date, Buyer [Quinn] and Seller [Bupp] agree to extend the mortgage commitment date until Seller [Bupp] terminates this Agreement in writing by notice to Buyer [Quinn].

2. Upon receipt of a mortgage commitment, Buyer [Quinn] will promptly deliver a copy of the commitment to Seller [Bupp].

3. Seller [Bupp] has the option to terminate this Agreement in writing, after the mortgage commitment date if the mortgage commitment:

a. Is not valid until the date of settlement, OR

b. Is conditioned upon the sale and settlement of any other property, OR

c. Contains any other condition not specified in this Agreement that is not satisfied and/or removed in writing by the mortgage lender with in 7 DAYS after the mortgage commitment date in paragraph 6(C)(1).

¶ 8 Thus, the agreement required Buyer to obtain a mortgage commitment by January 10, 2005, and to remove all conditions stated in the commitment that were not contained in the sales agreement by January 17, 2005. If these contractual obligations were not fulfilled, Seller had the right to terminate the agreement.

¶ 9 On appeal, Seller maintains that the mortgage commitment issued by Sky Bank contained the following three "conditions" that were "not specified" in the agreement and were not removed by January 17, 2005:

● A loan amount for $800,000.00, which was in excess of the $760,000.00 purchase price stipulated in the Agreement and purported to make "im-

provements to investment properties" unidentified in the Agreement;

- Additional property pledged as collateral, which included properties unidentified in the Agreement; and
- Appraisals as to the additional properties not included in the Agreement.

Brief of Appellee and Cross–Appellant Michael Bupp at 7.

¶ 10 We cannot agree with Seller's position that the outlined items constitute "conditions" on the contingency. The amount of the mortgage commitment is above that required in the sales agreement. There is nothing "contingent" about the amount to be loaned. Next, the fact that other properties are to be utilized to secure the commitment does not render the commitment "conditional." If anything, it ensures that the commitment is more secure. The commitment letter is clear and unequivocal that Sky Bank intended to lend Buyer more than the amount required by the mortgage contingency clause. That additional collateral was proffered for the loan is immaterial because it did not render the commitment uncertain.

¶ 11 The explicit language of the real estate agreement indicates that Buyer must "secure" a mortgage commitment by January 10, 2005. It does not indicate that Buyer cannot include other, unencumbered properties in addition to the property subject to the contract. It does not indicate that the commitment cannot be for more than required by the clause.

¶ 12 Seller relies upon *Scherer v. Nase,* 405 Pa.Super. 37, 591 A.2d 1086 (1991), wherein we held that the sellers of property were entitled to retain hand money because the buyer did not make a good faith effort to obtain a mortgage commitment. In that instance, the buyer did not complete a mortgage application with any financial institution at all. In this case,

Buyer not only applied for a mortgage, he received a promise for one in excess of the amount required by the mortgage contingency clause, and Buyer secured it with more collateral than would have been required by the real estate sales agreement.

¶ 13 Seller also cites *Shumaker v. Lear,* 235 Pa.Super. 509, 345 A.2d 249 (1975), in support, where the real estate agent instituted an action against the seller of the real estate for the agent's commission. The sale was not completed because the buyer was unable to procure a mortgage commitment. We noted therein that the general rule of law is that a sales commission accrues when the sales agreement is executed, it requires the existence of an enforceable contract, and when a contract is conditional, the commission is not earned until the condition is satisfied. We held that a mortgage commitment is a valid condition precedent to the buyer's obligation to perform; the commission was not earned in *Shumaker* because the buyer could not fulfill that condition.

¶ 14 We also noted that time was of the essence in the mortgage commitment clause and stated that if the commitment was not received by that date, the agreement was null and void. Since the commitment was not obtained, we refused to allow the real estate agent to recover a commission, despite the agent's allegation that the buyer would have secured a mortgage if the buyer had been given more time.

¶ 15 Herein, we recognize the validity of both the mortgage contingency clause and its indication that time is of the essence. However, the fact remains that Buyer received the commitment by the date required in the mortgage contingency clause. Thus, the sales agreement no longer was "contingent" when Seller refused to sell the real estate in question.

¶ 16 Indeed, it is incongruent for the seller to complain that an agreement has been breached because a buyer obtained a larger and more secure mortgage commitment than that required by the sales agreement. Mortgage contingency clauses are designed for the benefit of a buyer rather than a seller to ensure that the buyer is not obligated to purchase a piece of property that he will not be able to afford without obtaining a mortgage. Seller's objection to the mortgage commitment appears lacking in good faith and leveled as a pretext to avoid a contractual obligation that he subsequently decided he did not wish to fulfill.

¶ 17 This conclusion is supported by the evidence. The parties herein entered the following stipulation, "Almost immediately after the contract was signed, [Seller] wanted out of the deal and offered [Buyer] '5,000.00 total or something like that' to terminate the contract." Jointly Filed Stipulated Findings of Fact at ¶ 8. In light of this factual admission, we believe that *Kalina v. Eckert*, 345 Pa.Super. 220, 497 A.2d 1384 (1985), is instructive. Therein, the trial court had granted summary judgment in a breach of contract action instituted against the seller of property. The court ruled that the buyer had forfeited his right to purchase the real estate because he obtained his written mortgage commitment two days after the date required by the agreement.

¶ 18 On appeal, we reversed. We observed that the buyer had timely applied for his financing and obtained an informal commitment by the date required by the agreement. We concluded that the buyer could not avoid his contractual obligation to sell the property merely because the formal, written commitment was obtained two days late even though time was of the essence in the mortgage contingency clause. We reasoned:

The financing contingency in this agreement was for the benefit of the buyer. It allowed the buyer to escape his obligation to purchase the land if he could not obtain the necessary financing to close. The date for settlement, which was also made of the essence, provided assurance to the sellers that the property would not unduly be tied up by provisions of a sales agreement which the buyer could not consummate by final closing. In this case, the buyer was ready, willing and able to settle prior to the prescribed settlement date. Under these circumstances, the sellers should not have been permitted to avoid their contractual obligation to convey merely because of a nonprejudicial failure by the Savings and Loan Association to issue a formal, mortgage commitment on the precise day required by the agreement. It was sufficient compliance that the buyer had obtained timely assurance that financing would be available so that he could close the transaction within the time allowed therefore.

*Id.* at 1386.

¶ 19 Also pertinent is the following language in *Jenkins Towel Service, Inc. v. Tidewater Oil Co.*, 422 Pa. 601, 223 A.2d 84, 86 (1966), "We have consistently held that where a contract provides for performance by one party to the satisfaction of the other, 'the test of adequate performance is not whether the person for whom the service was rendered ought to be satisfied, but whether he is satisfied, there being, however, this limitation, that any dissatisfaction on his part must be genuine and not prompted by caprice or bad faith.'"

¶ 20 We conclude that Seller's dissatisfaction was pretextual. It is not subject to dispute that Seller wanted to avoid this contract immediately after its execution. Buyer had obtained financing for the pur-

chase by the date required in the mortgage contingency clause. The financing promised exceeded that necessary to purchase the real estate in question and was secured by more collateral than required. Seller is attempting to create phantom conditions on that commitment to avoid his contractual obligations. We will not permit that ruse to defeat Buyer's contractual rights to purchase this real estate. Hence, we affirm the trial court's conclusion that Buyer did not breach the agreement of sale and that Seller is contractually obligated to sell him the property in question.

¶ 21 We now address the issue raised in Buyer's appeal, which involves the pretrial ruling as to consequential damages. Buyer contends that the trial court erred when it determined that he could not recover two types of consequential damages: 1) his increased borrowing costs due to an increase in mortgage interest rate; and 2) loss of profits from the income generated by the commercial properties.

██ ¶ 22 Initially, we must address the Seller's position that since Buyer appealed from the order denying post-trial motions rather than the pretrial ruling limiting his claim for consequential damages, we "lack jurisdiction" to "hear his complaints about the pretrial ruling." Brief of Appellee and Cross–Appellant Michael Bupp at 24, 26. The law is to the contrary.

██ ¶ 23 The pretrial order in question was an interlocutory order because it merely limited the damages recoverable in this action and did not resolve all issues as to all parties or otherwise terminate the litigation. See Pa.R.A.P. 341(b). The final order in this action was the one that disposed of post-trial motions, which resolved all outstanding claims as to the two parties and from which Buyer filed his timely appeal. It is established that a notice of appeal filed from the entry of the final order in an action draws into question the

propriety of any prior non-final orders. *K.H. v. J.R.*, 573 Pa. 481, 826 A.2d 863 (2003). As we recently stated:

> [I]nterlocutory orders that are not subject to immediate appeal as of right may be reviewed in a subsequent timely appeal of a final appealable order or judgment. *Stephens v. Messick*, 799 A.2d 793, 798 (Pa.Super.2002); *see also Bird Hill Farms, Inc. v. United States Cargo & Courier Service, Inc.*, 845 A.2d 900, 903 (Pa.Super.2004) (stating that "[o]nce an appeal is filed from a final order, all prior interlocutory orders are subject to review"). Accordingly, interlocutory orders ... become reviewable on appeal upon the trial court's entry of a final order[.]

*Basile v. H & R Block, Inc.*, 926 A.2d 493, 498 (Pa.Super.2007).

██ ¶ 24 Seller also suggests that Buyer did not "otherwise" preserve his issues for appellate review. Brief of Appellee and Cross–Appellant Michael Bupp at 24. Again, we disagree. Buyer raised the propriety of the order limiting his consequential damages in his post-trial motions, which are devoted entirely to this question. The ruling also was contested pretrial. Thus, we cannot ascertain the basis upon which Seller urges a finding of waiver.

██ ¶ 25 We now address the merits of Buyer's appeal. In limiting consequentials, the trial court relied upon our Supreme Court's pronouncement in *Rusiski v. Pribonic*, 511 Pa. 383, 515 A.2d 507 (1986). In that case, the sellers owned a fifty-acre tract of land and had agreed to sell their house and two acres of land to buyers. After the sellers improperly breached the agreement of sale, the trial court granted specific performance to the buyers and also awarded as a component of their consequential damages an amount that reflected the fact that prevailing

mortgage rates had increased during the time frame that it took the buyers to enforce their contractual rights.

¶ 26 The Supreme Court addressed the issue of first impression of "whether an equity court can award damages to a buyer in a land sales transaction calculated upon an increased mortgage interest rate." *Id.* at 510. The Court noted that when the agreement of sale was entered, standard mortgage rates were 10.25 percent and that by the time the decree awarding specific performance was entered, rates had climbed to 15.25 percent. While the equity court concluded that buyers could recover the increased cost of borrowing, our Supreme Court disagreed.

¶ 27 It noted that under contract principles, "damages must be such as would naturally and ordinarily follow from the breach, must have been reasonably foreseeable and within the contemplation of the parties at the time they made the contract and must be capable of being proved with reasonable certainty." *Id.* at 512. It opined that changes in interest rates, while foreseeable, are not capable of being proven with reasonable certainty. It observed that "drastic fluctuations in interest rates over the recent past" rendered it "speculative for a court to award interest as damages in specific performance decrees." *Id.*

¶ 28 Thus, the trial court herein correctly concluded that Buyer could not recover for any increase in interest rates on mortgages occurring between the original closing date and the date of its ruling. At the present time, interest rates remain subject to significant fluctuations.

¶ 29 However, we cannot agree with the trial court's conclusion that Buyer cannot recover for the lost profits he would have realized if the agreement had been timely honored and which profits Seller has continued to enjoy. Nothing in our Supreme Court's pronouncement in *Rusiski*, which concerned residential property, can be remotely construed as prohibiting a party from recovering foreseeable, ascertainable, and readily calculable profits lost from a party's contractual breach. The "general rule of law applicable for loss of profits" in a contract action permits recovery of lost profits when "there is evidence to establish them with reasonable certainty," "there is evidence to show that they were the proximate consequence of the wrong" and if "they were reasonably foreseeable." *Company Image Knitware, Ltd. v. Mothers Work, Inc.,* 909 A.2d 324, 336 (Pa.Super.2006) (quoting *Birth Center v. St. Paul Companies, Inc.,* 567 Pa. 386, 787 A.2d 376, 387–88 n. 15 (2001)).

¶ 30 The present agreement of sale was not for residential real estate but for commercial properties. Seller collected profits that can be easily calculated based upon evidence obtained through discovery from those properties. These profits would have been paid to Buyer if Seller had not wrongfully refused to comply with the agreement of sale. It was clearly foreseeable that Buyer would suffer this loss of profits if Seller wrongfully refused to sell him the property.

¶ 31 In the appeal at Number 317 WDA 2007, we affirm in part and reverse in part and remand for calculation of damages in accordance with this adjudication. In the appeal at Number 827 WDA 2007, we affirm. Case remanded. Jurisdiction relinquished.

¶ 32 Judge TAMILIA Concurs in the Result.