J-A02002-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| CHELSEA HILLBERRY | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| COLLIN HILLBERRY | : | No. 972 WDA 2024 |

Appeal from the Order Entered July 12, 2024
In the Court of Common Pleas of Greene County Civil Division at No(s):
No. 22 A.D. 2021

BEFORE:  KUNSELMAN, J., MURRAY, J., and BECK, J.

MEMORANDUM BY KUNSELMAN, J.:          **FILED:  March 28, 2025**

Chelsea Hillberry (Mother) appeals from the July 12, 2024 order issued by the Greene County Court of Common Pleas, which adjusted Mother's and Collin Hillberry's (Father's) custody of the parties' five-year-old daughter, K.H. (the Child).  Included in Mother's appeal is the trial court's May 24, 2024 order, which granted Father's motion to add his parents (the Child's Paternal Grandparents) and Father's brother (Colton) and sister-in-law (collectively, the Proposed Supervisors) as appropriate custody supervisors.  After review, we affirm.

The record discloses the following background.  Mother and Father have been engaged in a lengthy custody dispute regarding the Child.  Since 2021, Father's custody has been supervised.  In 2023, Father petitioned to modify

his custody, which resulted in a two-day custody trial. After the trial, in October 2023, the court issued a custody order and opinion.

The trial court explained that Father's mental health was the central issue in the underlying custody case. *See* Trial Court Opinion, 10/27/23, at 9 (unnumbered). Father "has a long and serious history of mental health issues. Most of these center on certain sexual addictions and general sexual improprieties, which include victimization of others." *Id.* at 10 (unnumbered). Father also made an "extremely concerning statement" which indicated he "was worried about a possible scenario where the [C]hild (or her friends) may make advances towards him in the future and what his reaction to that may be." *Id.* at 11 (unnumbered). Thus, the trial court determined that it was "not ready to allow for unsupervised visitation between Father and the [C]hild" because "the risk to the [C]hild is simply too great, especially given the age of the [C]hild." *Id.*

Regarding custody supervisors for Father's custodial periods, the trial court stated that the previously agreed upon supervisors (Maternal Grandparents, Maternal Great-Grandparents, Father's brother (Cody) and sister-in-law, and a family friend) remained approved. Additionally, the court ordered that "the supervisors shall expand to include any reasonable supervisors, including, but not limited to, Paternal Grandparents. If there are disputes regarding supervisors, the [c]ourt will consider such by Motion." Trial Court Order, 10/27/23, at 3 (unnumbered).

On February 9, 2024, Father made a motion to appoint the Proposed Supervisors. Mother did not agree with those individuals being supervisors.

On May 2, 2024, the court held a hearing on Father's motion. The court heard testimony from the Proposed Supervisors, Father, Mother, Maternal Grandparents, and the parties' previous pastor. On May 24, 2024, the court entered an order finding the Proposed Supervisors to be appropriate supervisors with certain conditions. None of the individuals were to be solely responsible for supervision. If Paternal Grandparents were supervising, they needed to supervise together, as did Father's brother and sister-in-law. In addition, the Proposed Supervisors had to sign sworn affidavits "indicating they understand the terms, parameters, and responsibilities of supervision" and that by agreeing, they were "availing themselves of supervision by the [c]ourt and that they are subject to contempt proceedings for failing to abide by the terms of the supervision." Trial Court Order, 5/24/24, at 1-2 (unnumbered).

On April 17, 2024, unrelated to the Proposed Supervisors, Mother filed a Notice of Relocation. On May 23, 2024, the court held a hearing on the relocation. On July 12, 2024, the court entered a new custody order.

Mother first appealed directly from the trial court's May 2024 order regarding the Proposed Supervisors. However, this Court quashed the appeal as interlocutory because the trial court docket showed that the July 2024 custody order had been entered. Mother then timely filed this appeal from

the July order.[1]  She presents the following four issues for our review, which we reorder for ease of disposition:[2]

> 1. The court abused its discretion in finding that the [P]aternal [G]randparents and Father's brother and sister-in-law were appropriate supervisors of Father's custody periods when the court found after a full custody trial seven months prior that unsupervised custodial time with [F]ather was a risk to the [C]hild; when these individuals do not believe Father to be any risk to the [C]hild; when these individuals did not believe Father demonstrated any at risk behavior; when these individuals testified that [M]other manufactured the risk and when [M]other objects to these individuals being supervisors of custody.

> 2. The court erred as a matter of law in failing to place the [C]hild's best interest first when in so finding that the [P]aternal [G]randparents and Father's brother and sister-in-law were appropriate supervisors of Father's custody periods, over the objections of Mother, the court had to also set forth certain "conditions" and warn the family members of contempt for failing to abide by the same making the [C]hild's best interest secondary to the convenience of the Father and his family.

_____

[1] Mother's appeal from the July 12, 2024 custody order renders the May 24, 2024 order subject to appellate review.  **See Quinn v. Bupp**, 955 A.2d 1014, 1020 (Pa. Super. 2008) ("[I]nterlocutory orders that are not subject to immediate appeal as of right may be reviewed in a subsequent timely appeal of a final appealable order or judgment." (citations omitted)); **see also Walter v. Whitmore**, 293 A.3d 593, *7 (Pa. Super. 2023), _reargument denied_ (Mar. 22, 2023) (unpublished memorandum) ("When a party files a notice of appeal from a final order, the appeal draws into question the propriety of the earlier non-final orders in that case." (citations omitted)).

[2] We note that the trial court filed a statement pursuant to Appellate Rule 1925 which said, "[t]he instant [c]ourt relies on its Orders dated July 12, 2024 and May 24, 2024, attached hereto, with no additions to the record." Statement Pursuant to PA. R.A.P. 1925, 8/15/24, at 1 (unnumbered).

3. The court erred as a matter of law when after finding that the [P]aternal [G]randparents and Father's brother and sister-in-law were appropriate supervisors of Father's custody periods, it placed "conditions" on the supervision but failed to clearly set forth in its order the "terms, parameters, and responsibilities of supervision" so that the same could be enforced.

4. The court abused its discretion and erred as a matter of law when on May 24, 2024, it granted Mother's notice to relocate but denied Mother's de minimis schedule change to accommodate her move and required instead for her to submit by June 21, 2024, a schedule with a *de minimis* reduction in Father's custodial time and weekly contact and [M]other submitted this schedule with no objection from Father but the court then rejected Mother's proposal outright, without explanation and instead on July 12, 2024, entered a custody order substantially increasing [F]ather's supervised custodial time requiring two three-hour roundtrip travels per week except for four weeks per year and including Tuesday evenings, every week, and made this substantial change without analyzing the sixteen statutory factors.[3]

Mother's Brief at 7-9.

We begin with our well-settled standard of review:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by

_____

[3] Mother has withdrawn this argument on appeal. ***See*** Mother's Brief at 12. On August 15, 2024, after Mother filed her appeal, the trial court entered another order upon Mother's Motion for Clarification. The August 15 order clarified that the July 12 order was moot unless and until Mother relocated. If Mother did not relocate by August 30, 2024, the July 12 order was vacated, and the parties were to follow the October 2023 custody order, pending Mother's relocation. Mother ultimately chose not to relocate. In her brief, Mother explains that because the July order was only valid if she relocated, and she declined to do so, the issue is now moot. ***See id.*** at 13. Because Mother is no longer pursuing this issue on appeal, we need not address it.

competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

**Wilson v. Smyers**, 284 A.3d 509, 515 (Pa. Super. 2022) (quoting **S.T. v. R.W.**, 192 A.3d 1155, 1160 (Pa. Super. 2018)).

In a custody-related matter, the court's "paramount concern is the best interests of the [child] involved." **A.L.B. v. M.D.L.**, 239 A.3d 142, 148 (Pa. Super. 2020) (citation omitted). When ordering any form of custody, a court must determine the best interest of the child by considering all relevant factors.[4] **See** 23 Pa.C.S.A. § 5328(a). However, we have clarified that a court is not required to address the Section 5328(a) factors where an order merely

_____

[4] In 2024, the General Assembly enacted significant amendments to the custody factors "pursuant to Act of April 15, 2024, P.L. 24, No. 8 (known as 'Kayden's Law')." **Velasquez v. Miranda**, 321 A.3d 876, 886 n.6 (Pa. 2024). Kayden's Law expanded the factors to be considered in the court's best interest analysis and required the court to give "substantial weighted consideration" to, _inter alia_, the "safety of the child." **Id.** (citation omitted).

However, these statutory amendments took legal effect on August 13, 2024, _i.e._, after the trial court entered the relevant custody orders in this case in May and July 2024.

deals with a discrete and distinct issue. **See M.O. v. J.T.R.**, 85 A.3d 1058, 1063 (Pa. Super. 2014) ("Because the trial court did not make an award of custody, but merely modified a discrete custody-related issue, it was not bound to address the sixteen statutory factors in determining the [c]hildren's best interest.")

Here, the trial court's May 24, 2024 order did not award a form of custody. Instead, it dealt with the discrete and distinct custody-related issue of approving the Proposed Supervisors. Thus, the court was not required to address the Section 5328(a) factors in that order. **See id.**

Relevantly, supervised physical custody is defined as: "[c]ustodial time during which an agency or an adult designated by the court or agreed upon by the parties monitors the interaction between the child and the individual with those rights." 23 Pa.C.S.A. § 5322.

We address Mother's first and second issues together, as both issues challenge the trial court's approval of the Proposed Supervisors. Mother argues that the trial court abused its discretion by finding that the Proposed Supervisors were appropriate. Mother cites to the 2023 custody trial and order to establish that Father is a risk to the Child. Mother claims that the Proposed Supervisors did not testify at the custody trial and have chosen to stay away from the Child. **See** Mother's Brief at 17-18. Mother does not believe the Proposed Supervisors will keep the Child safe because they trust Father and do not believe that Father is a risk to the Child. **See id.** at 18-20. Mother claims it was Father's burden to show the Proposed Supervisors were

appropriate. ***See id.*** at 20. Mother states that Pennsylvania law does not provide measurable criteria to determine supervisors, but there is also no law stating that a supervisor can be trusted when they think the need for supervision is fabricated and the risk is embellished. ***See id.*** at 18-19.

In conjunction with the above, Mother also argues the trial court erred by not placing the Child's best interest first. ***See id.*** at 23. Mother states that she was unable to find case law on point to the instant matter, but that this Court has relied on the "commonsense factor" before when determining the best interest of the Child, which she believes is also relevant here. ***See id.*** at 24. Mother asserts that the Proposed Supervisors do not see the need for the important task the court is assigning to them. ***See id.*** at 25. Mother claims that by approving the Proposed Supervisors, the trial court placed the Child's best interest, the need to be safe, second to Father's interest and convenience. ***See id.***

First, we clarify that, contrary to some of Mother's arguments related to the previous custody trial, whether Father poses a risk to the Child is not the issue before us. The trial court has already determined that Father's custody must be supervised, and that finding is not being appealed here. The only issue before us is whether the court abused its discretion by finding that the Proposed Supervisors were appropriate.

Further, Mother's argument fails to appreciate the standard of review we must apply in custody cases. We must accept the trial court's findings, if they are supported by competent evidence. ***See Wilson***, 284 A.3d at 515

(citation omitted). Additionally, we must defer to the trial court on issues of credibility and weight of the evidence. *See id.* (citation omitted). It is not this Court's role to "re-find facts, re-weigh evidence, and re-assess credibility." *Id.* at 520 (citation omitted).

Here, the trial court's findings are supported by the record. Before approving the Proposed Supervisors, the court held a hearing and heard testimony from multiple witnesses. The Proposed Supervisors each confirmed that they had read the standing custody orders in this case and would follow the court's orders. *See* N.T., 5/2/24, at 41-42, 61-62, 76-77, 89-90. The trial court specifically asked Paternal Grandfather and Father's brother to confirm that they understood that it was not for them to decide if Father was a danger to the Child or if supervision was needed; even if they did not think Father was a danger, they were still required to supervise. *Id.* at 72-73, 85-86. Paternal Grandfather and Father's brother confirmed their understanding. *Id.* Further, they confirmed their understanding that if they failed to supervise, it could jeopardize their ability to supervise and Father's custody in the future. *See id.* at 73, 86. The Proposed Supervisors agreed to discuss the supervision with Mother. *See id.* at 39-40, 61, 77, 90. Father's sister-in-law testified that she would stay within seeing and hearing distance of Father and the Child and would not permit Father to go alone with the Child, even if he attempted to convince her otherwise. *See id.* at 89.

We acknowledge that Paternal Grandfather indicated that he believed some of the reasons that Father was required to have supervised visitation

were embellished or fabricated. *See id.* at 66-67, 69. However, he answered on cross examination that if Father wanted to take the Child on a walk, he would not watch out the window and would instead go with them. *See id.* at 67. Father's brother also testified that he did not think Father would be a threat to the Child right now. *See id.* at 80. Nevertheless, he asserted that Father could not talk him out of supervising a visit because he wants to make sure the Child is safe. *See id.* at 84-85. Again, it was the role of the trial court, not this Court, to weigh the evidence and make credibility determinations. *See Wilson, supra*.

Father also presented a November 2023 email exchange between Mother and Paternal Grandmother. In her email, Mother outlined parameters for supervision including: staying within hearing and seeing distance of Father and the Child, changing the Child's clothes in a separate and private area away from Father, dealing with any bathroom needs the Child had, letting Mother know of any issues, and ending the visit immediately if there was a safety issue and contacting Mother to come get the Child as soon as possible. *See* Defendant's Exhibit 1. Mother asked if those parameters were something Paternal Grandmother could agree to. *See id.* Paternal Grandmother responded on behalf of herself and Paternal Grandfather and said "Yes, of course, it's exactly what we imagined supervised visits would be." *Id.*

Furthermore, Father testified that there was a need for additional supervisors because he missed visits when the current supervisors were unavailable due to scheduling conflicts. *See* N.T., 5/2/24, at 8. Conversely,

Mother testified that from October 2023 to May 2024, there had only been two missed visits due to supervisor unavailability. *See id.* at 143-44. Mother also testified that she had suggested additional supervisors and Father denied them, which Father admitted. *See id.* at 15-16, 143, 152.

The trial court resolved the conflict by approving Father's Proposed Supervisors. Notably, the trial court conditioned the supervision by requiring that none of the Proposed Supervisors be solely responsible for supervision. Trial Court Order, 5/24/24, at 1 (unnumbered). Paternal Grandparents must supervise together, and Father's brother and sister-in-law must supervise together. *Id.* The court also required the Proposed Supervisors to sign affidavits indicating that they understood the terms of the supervision and were subject to contempt proceedings. *See id.* at 1-2 (unnumbered).

Thus, based on the evidence of record, we cannot say that the trial court's decision to approve the Proposed Supervisors was unreasonable or that the trial court improperly subordinated the Child's best interest to Father's interest. *See Wilson, supra.* In essence, Mother is asking us to re-find facts, re-weigh evidence, and re-assess credibility, which we cannot do. *See id.* Mother's first and second issues merit no relief.

For Mother's third issue, she argues that the trial court erred by placing conditions on the Proposed Supervisors without setting forth the "terms, parameters, and responsibilities of supervision" in its May 2024 order. *See* Mother's Brief at 21. Mother asserts that "the court should have taken care to spell out what was to be included in the affidavits it ordered." *See id.* at

22. Although the affidavits reference the standing orders of court, Mother claims that they fail to state the contents of the standing orders. *See id.* Mother argues that the trial court's order must be more specific to be enforceable, and to be able to find any of the supervisors in contempt for failing to abide by the terms of supervision. *See id.* at 22-23.

We disagree. First, as noted, the Proposed Supervisors testified that they had read the trial court's standing custody orders and would follow them. *See* N.T., 5/2/24, at 41-42, 61-62, 76-77, 89-90. Second, the court's May 2024 order required the Proposed Supervisors to sign sworn affidavits indicating that: 1) they understood the terms, parameters, and responsibilities of supervision, 2) by signing the affidavits they were availing themselves of supervision by the court, and 3) they were subject to contempt proceedings for failing to abide by the terms of supervision. *See* Trial Court Order, 5/24/24, at 1-2 (unnumbered).

In accordance with the trial court's directive, the Proposed Supervisors signed affidavits stating that they "understand the terms, parameters, and responsibilities of supervision as set forth in the standing Orders of Court and the within Affidavit." Affidavits of Custody Supervisors, 6/14/24. In the affidavits, the Proposed Supervisors availed themselves of supervision by the trial court and acknowledged that they were subject to contempt proceedings for failing to abide by the terms of supervision. *See id.*

Regarding the court's standing orders, as explained above, the October 2023 order stated "the supervisors shall expand to include any reasonable

supervisor[.]" Trial Court Order, 10/27/23, at 3 (unnumbered). Also, "[a]ny supervisors shall observe from a distance to the extent possible, so as not to interfere with the visits." *Id.*

Further, after Mother filed a Motion for Clarification, the court entered another order in November 2023. That order stated:

> Paternal Grandparents have not been ordered as appropriate/reasonable supervisors for visits, but nothing in the record would convince the [c]ourt that they are or are not reasonable supervisors. The [c]ourt still requires the parties to agree to supervisors, and if not, will consider motions on this issue.
>
> [. . .]
>
> Supervision, in addition to the normal meaning, shall be defined as:
>
> - Staying within reasonable and constant seeing distance to ensure safety.
> - Supervising and assisting Father in changing the [C]hild's clothes and attending to bathroom needs.

Trial Court Order, 11/28/23, at 1-2 (unnumbered) (formatting adjusted).

Thus, the court's standing orders sufficiently set forth terms, parameters, and responsibilities of supervision, including staying within constant seeing distance. In accordance with the court's May 2024 order, the Proposed Supervisors' affidavits stated they understood such terms and were subject to contempt for failing to abide by them. Mother has not alleged any specific deficiencies in these parameters. Thus, we are not persuaded by

Mother's argument that the court's May 2024 order was so vague as to be unenforceable. Mother's third issue merits no relief.

In sum, we discern no abuse of discretion in the trial court's May 24, 2024 order regarding the approval of the Proposed Supervisors for Father's periods of supervised partial custody.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 3/28/2025

- 14 -